**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE STEMLINE THERAPEUTICS, INC. SECURITIES LITIGATION | Master File No. 1-17-CV-00832-PAC |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  NATURE OF THE ACTION ............................................................................. 2

III. PROCEDURAL HISTORY ............................................................................... 3

IV.  THE PROPOSED SETTLEMENT .................................................................. 4

V.   ARGUMENT ....................................................................................................... 5

    A.   The Settlement Class Should be Certified ..................................................... 5

        1.   Numerosity ............................................................................................. 6

        2.   Commonality .......................................................................................... 7

        3.   Typicality ................................................................................................ 7

        4.   Adequacy ................................................................................................ 8

        5.   Common Questions Predominate and a Class Action is the Superior Method of Adjudication ..................................................................................... 9

    B.   The Proposed Settlement Warrants Preliminary Approval ............................ 11

        1.   Plaintiffs and Counsel Adequately Represented the Class ....................... 12

        2.   The Proposed Settlement Was the Result of Fair, Informed Arm's-Length Negotiations ........................................................................................ 14

        3.   The Relief Provided for the Class is Adequate ......................................... 14

        4.   The Settlement Treats Class Members Equitably ...................................... 19

    C.   The Proposed Form of Notice and Notice Schedule Should be Approved .................... 20

1.   The Proposed Form of Notice ..................................................................................... 20

2.   The Proposed Schedule ............................................................................................... 21

**VI. CONCLUSION** .................................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

*Adair v. Bristol Tech. Sys., Inc.*,
   No. 97 CIV. 5874 RWS, 1999 WL 1037878 (S.D.N.Y. Nov. 16, 1999) ................................. 18

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................................................ 9, 10

*Athale v. Sinotech Energy Ltd.*,
   No. 11 CIV. 05831 (AJN), 2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013) ............................ 10

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   222 F.3d 52 (2d Cir. 2000) ....................................................................................................... 8

*Billhofer v. Flamel Techs., S.A.*,
   281 F.R.D. 150 (S.D.N.Y. 2012) .............................................................................................. 7

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ............................................................................................................... 17

*Brown v. Kelly*,
   502 F.3d 91 (2d Cir. 2007) ..................................................................................................... 10

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007) ......................................................................................... 6, 7, 17

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ................................................................................................... 12

*City of Providence v. Aeropostale, Inc.*,
   No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ..................... 15, 17

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
   No. 12CIV0256LAKAJP, 2017 WL 3608298 (S.D.N.Y. Aug. 22, 2017) ................................. 9

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) ....................................................................................................... 6

*Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................................ 20

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ............................................................................................... 11, 14

*Dial Corp. v. News Corp.*,
    317 F.R.D. 426 (S.D.N.Y. 2016) ................................................................. 19

*Fogarazzao v. Lehman Bros.*,
    232 F.R.D. 176 (S.D.N.Y. 2005) ................................................................. 7

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) .......................................................................... 17

*Hefler v. Wells Fargo & Co.*,
    No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ..................................... 18

*Hicks v. Stanley*,
    No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............................... 17

*In re "Agent Orange" Prod. Lia*b. Litig.,
    597 F. Supp. 740 (E.D.N.Y. 1984) ............................................................. 13

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................. 20

*In re Alloy, Inc. Sec. Litig.*,
    No. 03 CIV.1597(WHP), 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ................................. 15

*In re Altair Nanotechnologies Sec. Litig.*,
    No. 14 CIV. 7828 (AT), 2016 WL 7647043 (S.D.N.Y. Jan. 22, 2016) ................................. 16

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    689 F.3d 229 (2d Cir. 2012) .......................................................................... 5

*In re Blech Sec. Litig.*,
    187 F.R.D. 97 (S.D.N.Y. 1999) ................................................................. 6

*In re Blech Sec. Litig.*,
    No. 94 CIV. 7696 (RWS), 2000 WL 661680 (S.D.N.Y. May 19, 2000) ............................... 18

*In re Bristol-Myers Squibb Sec. Litig.*,
    361 F. Supp. 2d 229 (S.D.N.Y. 2005) ......................................................... 17

*In re Citigroup Inc. Bond Litig.*,
    988 F. Supp. 2d 371 (S.D.N.Y. 2013) ......................................................... 17

*In re Citigroup Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013) ......................................................... 14

*In re Deutsche Bank AG Sec. Litig.*,
   328 F.R.D. 71 (S.D.N.Y. 2018) ......................................................................... 8

*In re Facebook, Inc.*,
   312 F.R.D. 332 (S.D.N.Y. 2015) .................................................................. 6, 7

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ...................................................................... 13

*In re Hi-Crush Partners L.P. Sec. Litig.*,
   No. 12-CIV-8557 CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014).............................. 15, 19

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) .................................................................. 16, 17

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) ................................................................. 7, 9, 15

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   No. 11 MD 2262 (NRB), 2018 WL 3475465 (S.D.N.Y. July 19, 2018)............................. 5, 11

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
   No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009).............................. 8, 9

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 57 (S.D.N.Y. 1993) ....................................................................... 13

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ................................................................... 11, 12

*In re PaineWebber Ltd. Partnerships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ...................................................................... 13

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ...................................................................... 11

*In re Sanofi-Aventis Sec. Litig.*,
   293 F.R.D. 449 (S.D.N.Y. 2013) ...................................................................... 10

*In re Take Two Interactive Sec. Litig.*,
   No. 06 CIV. 1131 (RJS), 2010 WL 11613684 (S.D.N.Y. June 29, 2010)................... 18, 19, 20

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ................................ 17

*In re Veeco Instruments, Inc. Sec. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ................................................................. 6

*Mayhew v. KAS Direct, LLC*,
    No. 16 CV 6981 (VB), 2018 WL 3122059 (S.D.N.Y. June 26, 2018).................................... 11

*New Jersey Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
    No. 08 CIV. 5653 PAC, 2014 WL 1013835 (S.D.N.Y. Mar. 17, 2014).................................... 8

*New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
    No. 08-CV-5310 (DAB), 2016 WL 7409840 (S.D.N.Y. Nov. 4, 2016).................................... 6

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*,
    No. 08 CIV. 7670 BSJJCF, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ................................. 19

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*,
    No. 94 CIV. 5587(PKL)(RL, 2003 WL 21136726 (S.D.N.Y. May 15, 2003) ......................... 18

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)........................................................................ 6

*Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................................... 17

*Thomas v. MagnaChip Semiconductor Corp.*,
    No. 14-CV-01160-JST, 2017 WL 4750628 (N.D. Cal. Oct. 20, 2017).................................... 18

*Traffic Exec. Ass'n-E. Railroads*,
    627 F.2d 631 (2d Cir. 1980)........................................................................ 11

*Vaccaro v. New Source Energy Partners L.P.*,
    No. 15 CV 8954 (KMW), 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ............................... 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)................................................................. 11, 13, 14, 20

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)................................................................... 5, 20

*Wilson v. LSB Indus., Inc.*,
    No. 15CIV7614RAGWG, 2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018) ............................... 10

**Statutes**

15 U.S.C. 78u-4(a)(7) ........................................................................ 15, 19

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................... 5, 15

Fed. R. Civ. P. 23(a) ....................................................................................................... 5, 10

Fed. R. Civ. P. 23(a)(1) ......................................................................................................... 6

Fed. R. Civ. P. 23(a)(2) ......................................................................................................... 7

Fed. R. Civ. P. 23(a)(3) ......................................................................................................... 7

Fed. R. Civ. P. 23(a)(4) ...................................................................................................... 8, 9

Fed. R. Civ. P. 23(b) .......................................................................................................... 5, 9

Fed. R. Civ. P. 23(b)(3) ..................................................................................................... 9, 10

Fed. R. Civ. P. 23(b)(3)(D) ................................................................................................... 10

Fed. R. Civ. P. 23(c)(2) ......................................................................................................... 19

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................................... 19

Fed. R. Civ. P. 23(c)(3) ......................................................................................................... 20

Fed. R. Civ. P. 23(e) .................................................................................................. 12, 14, 19

Fed. R. Civ. P. 23(e)(1) ......................................................................................................... 19

Fed. R. Civ. P. 23(e)(3) .................................................................................................... 14, 18

Fed. R. Civ. P. 23(g) ........................................................................................................... 8, 9

Lead Plaintiffs Adam Ludlow, Daljit Singh, and Kenneth Walsh (collectively, "Lead Plaintiffs") and Representative Plaintiff Marion Beeler ("Beeler," and together with Lead Plaintiffs, "Plaintiffs") respectfully submit this memorandum of law in support of their unopposed[1] motion for an order preliminarily approving the proposed settlement (the "Settlement") of this action embodied in the Stipulation of Settlement (the "Stipulation"), filed herewith. Plaintiffs ask the Court to enter an order preliminarily approving the proposed class action settlement (the "Preliminary Approval Order"). The Preliminary Approval Order will: (1) preliminarily approve the Settlement; (2) preliminarily certify the Settlement Class,[2] appointing Plaintiffs as class representatives and Plaintiffs' Co-Lead Counsel as class counsel for settlement purposes; (3) approve the form and manner of Notice of the Settlement to the Settlement Class; and (4) schedule a final approval hearing (the "Settlement Hearing") at which this Court will, among other things, consider final approval of the Settlement.

## I.   INTRODUCTION

In this securities class action brought on behalf of investors in Stemline Therapeutics, Inc. ("Stemline" or the "Company"), Plaintiffs have agreed to resolve Settlement Class claims for $680,000 (the "Settlement Amount").

The proposed Settlement was reached after the parties engaged in hard-fought litigation on Defendants' motion to dismiss, which the Court granted on March 15, 2018. The Settlement is the product of good faith, arm's-length negotiations between experienced counsel during the pendency of Plaintiffs' appeal of the Court's dismissal to the Second Circuit, during which time the parties

---

[1] While Defendants do not oppose the motion, Defendants do not agree with all of Plaintiffs' descriptions and representations herein.

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Stipulation.

participated in mandatory mediation through the Second Circuit's mediation and settlement program (CAMP).

To approve the Settlement, the Court must ultimately determine that it is fair, reasonable, and adequate. The Settlement meets these requirements. At this point, however, the question is not whether to approve the Settlement, but whether the Settlement might be approved, a standard the Settlement plainly satisfies. While Plaintiffs believe their claims are meritorious, significant issues exist with respect to liability, damages, and class certification, which is evident in this Court's decision to dismiss the action. The $680,000 recovery is a beneficial resolution of this litigation, and is in the best interests of the Settlement Class.

Because all of the requirements for class certification approval are met, the Court should certify the Class for settlement purposes only. Further, because the Plan of Allocation is fair, reasonable and adequate, it should be preliminarily approved. Finally, the Court should approve the Notice, and should schedule a final approval hearing to determine whether the proposed Settlement, the Plan of Allocation, and Lead Counsel's request for attorneys' fees, reimbursement of expenses, and an award to Plaintiffs should be finally approved as fair, reasonable and adequate.

## II.    NATURE OF THE ACTION

This litigation was commenced on February 3, 2017 when a securities class action complaint styled as *Hedlund v. Stemline Therapeutics, Inc. et al.*, 17-cv-00832 was filed on behalf of all persons or entities who purchased or otherwise acquired publicly traded securities of Stemline. The operative complaint is the Amended Class Action Complaint for Violations of Federal Securities Laws (the "Amended Complaint"), which Plaintiffs filed on June 26, 2017. The Complaint alleges, among other things, violations of Sections 11 and 12 of the Securities Act of 1933 (the "Securities Act") and Sections 10(b) and 20(a) the Securities Exchange Act of 1934 (the

"Exchange Act"), and Rule 10b-5 promulgated thereunder, against Stemline, Ivan Bergstein, Ron Bentsur, Eric L. Dobmeier, Alan Forman, David Gionco, Kenneth Zuerblis, and Jeffries LLC (collectively, "Defendants").

The Amended Complaint alleges that between January 20, 2017 and February 1, 2017, inclusive (the "Settlement Class Period"), Defendants allegedly made misrepresentations and/or omissions of material fact, including in connection with the secondary public offering of common stock on or about January 20, 2017 (the "SPO"), related to the clinical trial for one of Stemline's drug candidates.

## III.   PROCEDURAL HISTORY

Beginning on February 3, 2017, multiple securities class action complaints were filed against Stemline in the United States District Court for the Southern District of New York. On April 4, 2017, Lead Plaintiffs and one other group of movants, including Beeler, each filed a motion for consolidation of related actions, appointment as lead plaintiff, and approval of counsel. Beeler and the other movants withdrew their motion on April 17, 2017. On April 25, 2017, the Court ordered the cases consolidated, appointed Lead Plaintiffs and approved their choice of counsel, The Rosen Law Firm, P.A. and Pomerantz LLP, as Co-Lead Counsel ("Lead Counsel").

Plaintiffs filed the Amended Complaint on June 26, 2017. On August 25, 2017, Defendants moved to dismiss the Amended Complaint. Plaintiffs opposed the motions on October 24, 2017, and Defendants filed reply papers on December 8, 2017. On March 15, 2018, the Court granted Defendants' motions to dismiss in their entirety. Plaintiffs filed a notice of appeal from the Court's Order on April 11, 2018 and filed their opening appellate brief with the Second Circuit Court of Appeals on June 11, 2018.

The Settling Parties participated in a mediation session with Kathleen M. Scanlon, Chief Circuit Mediator on June 7, 2018, and a second, follow-up session on June 20, 2018. Negotiations continued after the mediation sessions, with a settlement in principle reached between the Settling Parties on June 27, 2018. The parties then filed a Local Rule 42.1 Stipulation on July 12, 2018, dismissing the appeal without prejudice to reinstatement. The Settling Parties continued negotiations of the Settlement terms, entering into a term sheet on September 13, 2018 and the Stipulation on March 11, 2018.

## IV.   THE PROPOSED SETTLEMENT

The proposed Settlement consists of $680,000.00 in cash to be paid by Stemline and its insurer(s) on behalf of the Defendants. The Settlement Amount will be deposited into an interest-bearing escrow account within thirty calendar days following written notice that the Court has entered the Preliminary Approval Order (with any interest or other income earned thereon, the "Settlement Fund"). The Settlement Fund shall be used to pay any Administrative Costs, Taxes and Tax Expenses, and attorney's fees and expenses as approved by the Court, with the balance of the Settlement Fund to be distributed to Authorized Claimants. In return, the Settlement provides that Plaintiffs and the Settlement Class will release all Released Claims against Defendants and their Related Parties.

Lead Counsel intend to move for an award of attorney's fees of up to $226,667 (one-third of the Settlement Amount) plus interest, and reimbursement of no more than $50,000 in litigation expenses. Lead Counsel also intend to request an Award to Plaintiffs, collectively not to exceed $4,000 ($1,000 each).

### V.   ARGUMENT[3]

#### A.   <u>The Settlement Class Should be Certified</u>

As part of the preliminary approval of the Settlement, Plaintiffs seek preliminary certification of the Settlement Class for the purposes of settlement. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262 (NRB), 2018 WL 3475465, at *1 (S.D.N.Y. July 19, 2018) ("Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied.") (citation omitted); *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, 2009 WL 517846, at *8 (S.D.N.Y. Dec. 23, 2009) ("The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of class-action settlement.") (citing *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982)). The stipulated proposed Settlement Class includes all Persons who purchased Stemline securities (i) during the Settlement Class Period and/or (ii) pursuant or traceable to the SPO, and were allegedly damaged thereby. Stipulation, ¶1.36. The Settlement Class specifically excludes Defendants, current and former officers and directors of the Company or Jefferies, members of the Defendants' immediate families, as well as the Defendants' legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a majority ownership interest. *Id.* Also excluded from the Settlement Class are those Persons who file valid and timely requests for exclusion in accordance with the Court's Preliminary Approval Order. *Id.*

Rule 23 of the Federal Rules of Civil Procedure enumerates the requirements for certifying a settlement class: numerosity, commonality, typicality, and adequacy of representation, and at

---

[3] The parties have conferred and jointly state that the Court may entertain this motion notwithstanding the filing of Plaintiffs' notice of appeal because the appeal has been dismissed (without prejudice to reinstatement) pursuant to Local Rule 42.1

least one subsection of Rule 23(b). Fed. R. Civ. P. 23(a) and 23(b); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012). "The Second Circuit has directed district courts to apply Rule 23 according to liberal rather than a restrictive interpretation . . . . Accordingly, in an alleged securities fraud case, when a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward." *In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999); *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 237 (S.D.N.Y. 2006). As detailed immediately below, these requirements are met here, and the Settlement Class should therefore be certified for settlement purposes.

### 1.  Numerosity

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Impracticable means "only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244–45 (2d Cir. 2007). Although the "[d]etermination of practicability depends on all circumstances, not on mere numbers," *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993), "[i]n the Second Circuit, a proposed class of more than forty members presumptively satisfies the numerosity requirement." *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, No. 08-CV-5310 (DAB), 2016 WL 7409840, at *2 (S.D.N.Y. Nov. 4, 2016) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). Further, "[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Facebook, Inc.*, 312 F.R.D. 332, 341 (S.D.N.Y. 2015) (citation omitted).

As of February 24, 2017, there were 23.659 million common shares of Stemline outstanding. *See* Complaint ¶86. Millions of shares were publicly traded during the Settlement Class Period, and Stemline offered and sold 4.5 million shares of common stock to the members of the Class pursuant to a secondary public offering. *Id.* Given the volume of shares outstanding, it is likely there are hundreds or thousands of class members, satisfying the numerosity requirement.

### 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A single common question may be sufficient to satisfy the commonality requirement." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 84–85 (S.D.N.Y. 2007) (citation omitted). In securities actions, "common questions of law and fact are present" as "the alleged fraud involves material misrepresentations and omissions in documents circulated to the investing public. . . ." *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 156 (S.D.N.Y. 2012) (citation omitted).

In this case, there are common questions of law and fact relating to whether Defendants' statements and omissions were materially false and misleading, whether Plaintiffs sustained damages, and if so, the proper measure of damages. Thus, there are questions of law and of fact common to the proposed class.

### 3. Typicality

Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement "is not demanding." *Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States*, 504 F.3d at 245. Class

members are not required to share identical claims and "[f]actual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct." *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009).

Plaintiffs alleged a common course of unlawful conduct similarly affecting them and all other Settlement Class Members. Plaintiffs, and each Settlement Class Member, acquired Stemline securities in reliance upon the same alleged misstatements or omissions relating to the failure to disclose a patient's death. Thus, Plaintiffs and the Settlement Class' interests align and the typicality requirement is satisfied.

### 4. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A representative party is adequate if: (1) there are no conflicts of interest between the plaintiffs and members of the class; and (2) plaintiffs' attorneys are experienced and qualified. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000); *New Jersey Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 CIV. 5653 PAC, 2014 WL 1013835, at *7 (S.D.N.Y. Mar. 17, 2014). A "conflict or potential conflict alone will not . . . necessarily defeat class certification – the conflict must be fundamental." *In re Deutsche Bank AG Sec. Litig.*, 328 F.R.D. 71, 81–82 (S.D.N.Y. 2018) (citation omitted).

Plaintiffs' interests do not conflict in any way with those of the Settlement Class. Plaintiffs and the Settlement Class Members all purchased shares of Stemline common stock based on the same allegedly material, false and misleading statements or omissions, and were allegedly damaged as a result. Additionally, Lead Counsel are experienced and capable of prosecuting this action on behalf of the Settlement Class. Lead Counsel have served as lead or co-lead counsel in

numerous securities class actions, obtaining substantial settlements and recoveries on behalf of securities classes. Copies of Lead Counsel's firm resumes are attached as Exhibits 1 and 2.

Lead Counsel also satisfy Rule 23(g)'s adequacy requirements. In assessing proposed class counsel's adequacy, a court must consider the following: "(1) the work counsel has done in identifying or investigating potential claims in the action, (2) counsel's experience in handling class actions, other complex litigation, and the claims of the type asserted in the action, (3) counsel's knowledge of the applicable law, and (4) the resources counsel will commit to representing the class." *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, No. 12CIV0256LAKAJP, 2017 WL 3608298, at *7 (S.D.N.Y. Aug. 22, 2017). Lead Counsel have performed substantial work investigating the claims in this Action, filing the Amended Complaint, opposing Defendants' motion to dismiss, and filing an appellate brief after the Court's judgment.

Accordingly, Plaintiffs have satisfied Rule 23(a)(4) and Lead Counsel have satisfied Rule 23(g), and respectfully request appointment as Class Representatives and Class Counsel respectively for purposes of the Settlement.

### 5. Common Questions Predominate and a Class Action is the Superior Method of Adjudication

In certifying a class, the court must also consider whether the proposed class meets one of the requirements of Rule 23(b). *In re Initial Pub. Offering*, 243 F.R.D. at 84. The Settlement Class here satisfies the requirements of Rule 23(b)(3) in that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"Courts generally focus on the liability issue in deciding whether the predominance requirement is met," *In re Marsh & McLennan,* 2009 WL 5178546, at *11, and as noted by the

9

Supreme Court, "[p]redominance is a test readily met in certain cases alleging . . . securities fraud." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). In this case, the common question of whether Defendants made false and misleading statements predominates. *In re Sanofi-Aventis Sec. Litig.*, 293 F.R.D. 449, 457 (S.D.N.Y. 2013) (whether Defendants' statements were materially misleading to a reasonable investor is an issue "subject to generalized proof, and thus applicable to the class as a whole") (citing *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir.2010)); *Athale v. Sinotech Energy Ltd.*, No. 11 CIV. 05831 (AJN), 2013 WL 11310686, at *3 (S.D.N.Y. Sept. 4, 2013) (Rule 23(b)(3) satisfied because "the Class's claims depend on demonstrating and proving the various and complex alleged violations" of the Securities Act and the Exchange Act).

For the superiority analysis, Rule 23(b)(3) considers the following factors relevant: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."[4] *Wilson v. LSB Indus., Inc.*, No. 15CIV7614RAGWG, 2018 WL 3913115, at *17 (S.D.N.Y. Aug. 13, 2018). Given the complex nature of securities class actions, the large numbers of geographically dispersed class members, and the high costs associated with individualized actions, it is unlikely that most Settlement Class Members would be able to obtain relief with class status. Lead Counsel does not anticipate any difficulties in managing this Action as a class action. Further, any

---

[4] This is a settlement in lieu of a trial, so the Rule 23(b)(3)(D) inquiry is not required. *See Amchem Products, Inc.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

Settlement Class Members who desire to pursue individualized actions have the option to opt-out of the Settlement.

Accordingly, the proposed Settlement Class meets all of the requirements of Rule 23(b)(3) and Rule 23(a) and the Court should certify the Settlement Class for settlement purposes only.

## B. <u>The Proposed Settlement Warrants Preliminary Approval</u>

A court's "review of a proposed class action settlement is a two-step process" comprised of preliminary approval and a fairness hearing. *Mayhew v. KAS Direct, LLC*, No. 16 CV 6981 (VB), 2018 WL 3122059, at *7 (S.D.N.Y. June 26, 2018) (citing *Manual for Complex Litig.*, Fourth § 21.632 (2004)). "There is a 'strong judicial policy in favor of settlements, particularly in the class context' and 'compromise' is 'encouraged by the courts and favored by public policy.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *see also In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.") (citation omitted).

At this stage, "courts make a preliminary evaluation of the fairness of the settlement, prior to notice." *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). Fairness is determined "by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). "This analysis is 'a determination that there is what might be termed 'probable case' to submit the proposal to class members and hold a full-scale hearing as to its fairness.'" *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 2018 WL 3475465, at *1 (quoting *In re Traffic Exec. Ass'n-E. Railroads*, 627 F.2d 631, 634 (2d Cir. 1980)); *see also In re Prudential Securities Inc. Ltd. Partnerships Litigation*, 163 F.R.D. at 209–10 ("The settlement is now before the Court for

the purposes of preliminary approval of the settlement as possible fair, reasonable and adequate. .

. . The Court will be in a position to fully evaluate the *Grinnell* factors at the fairness hearing.").[5]

Rule 23(e)[6] directs the court to consider four factors in determining whether a settlement

is fair, reasonable, and adequate: whether "(A) the class representatives and class counsel have

adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief

provided for the class is adequate . . .; and (D) the proposal treats class members equitably relative

to each other." *See also, NASDAQ*, 176 F.R.D. at 102 ("Where the proposed settlement appears to

be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does

not improperly grant preferential treatment to class representatives or segments of the class and

falls within the range of possible approval" approval is warranted.). The proposed Settlement

supports a finding of fairness, reasonableness, and adequacy.

### 1. Plaintiffs and Counsel Adequately Represented the Class

Plaintiffs and Lead Counsel began investigating the allegations in the Amended Complaint

over a year prior to the settlement negotiations. The investigation included, among other things,

an extensive review and analysis of: (1) all relevant Stemline filings with the SEC; (2) Stemline's

other public statements, including press releases; (3) reports of securities and financial analysts;

and, (4) news articles and other commentary and analysis regarding Stemline and the industry in

---

[5] The *Grinnell* factors considered at the final fairness hearing include: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

[6] Rule 23(e) was amended, effective December 1, 2018. The analysis herein applies these amendments.

which it operates. Lead Counsel also consulted with experts. In addition to Lead Counsel's factual investigation, Lead Counsel prepared the Amended Complaint, opposed Defendants' motions to dismiss, and prepared an appellate brief. Plaintiffs and Lead Counsel were well informed about the strengths and weaknesses of the case, enabling them to appropriately evaluate the Settlement's fairness, reasonableness, and adequacy.

The proposed Settlement Amount constitutes approximately 3.8% of the likely recoverable damages if Plaintiffs had prevailed. After consulting with experts, Plaintiffs estimate that their maximum recovery, assuming success on all claims, would be approximately $17.7 million assuming the success of all claims. This recovery, given that this Court dismissed Plaintiffs' claims in their entirety, falls within the range of reasonableness and demonstrates that Plaintiffs and Lead Counsel have adequately represented the Class. *See Wal-Mart*, 396 F.3d at 119 (range of reasonableness "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011) (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 462 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987) ("The adequacy of the amount achieved in settlement may not be judged 'in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'"); *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 129–30 (S.D.N.Y. 1997) (quoting *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993)) (adequacy of settlement amount "is not susceptible of a mathematical equation

yielding a particularized sum,' but turns on whether the settlement falls within 'a range of reasonableness.'").

### 2. The Proposed Settlement Was the Result of Fair, Informed Arm's-Length Negotiations

The Settlement is entitled to a presumption of fairness, as it is the product of arm's-length negotiations between well-experienced class action counsel. *Wal-Mart*, 396 F.3d at 116 (quoting *Manual for Complex Litigation* (Third), § 30.42 (1995)); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381 (S.D.N.Y. 2013).

Here, the arm's-length negotiations took place over several months between parties knowledgeable about case facts and allegations. The parties participated in negotiations on two separate occasions before an experienced mediator, Kathleen M. Scanlon, and negotiated additional specific Settlement terms for several months after agreeing to a settlement in principle. *See D'Amato*, 236 F.3d at 85 (involvement of a mediator helps ensure there is no collusion). Lead Counsel are both nationally-recognized law firms experienced in securities litigation and class actions. *See* Exhibits 1 and 2. Defendants are also represented by prominent, nationally-recognized, experienced law firms.

### 3. The Relief Provided for the Class is Adequate

In determining whether the relief provided to the class is adequate, Rule 23(e) provides four additional factors for a court to consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e).

14

(a)      The Costs, Risks, and Delay of Trial and Appeal

The immediate benefits of the proposed Settlement outweigh the substantial risks, delay, and expense of continued litigation. *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014). While Plaintiffs believe their claims have merit, the fact is that this Court granted Defendants' motion to dismiss the Amended Complaint in its entirety. Plaintiffs have appealed the dismissal, but there is certainly no guarantee of success, either at the appellate level or on remand. Even if successful, Plaintiffs will face other risks, at the class certification stage and in establishing liability on motions for summary judgment and/or at a trial on the merits. Plaintiffs would also bear the burden of proving damages. *In re Initial Pub. Offering*, 243 F.R.D. at 93. Moreover, Plaintiffs would incur extensive expenses in connection with continued litigation. *In re Alloy, Inc. Sec. Litig.*, No. 03 CIV.1597(WHP), 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004). In addition, if this action were litigated to conclusion, including trial and appeals, there would likely be years before final resolution. *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 WL 7323417, at *5 (S.D.N.Y. Dec. 19, 2014) (courts recognize "likely duration of litigation" as one of the "critical factors in evaluating the reasonableness of a settlement"). Given the complexities and uncertainties inherent in continued litigation, the proposed Settlement is in the best interests of the Settlement Class.

(b)      The Effectiveness of the Proposed Method of Distributing Relief to the Class

First, the proposed form and method of Notice to the Settlement Class meet the requirements of due process, Rule 23, and Section 21D(a)(7) of the Exchange Act, 15 U.S.C. 78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995. In accordance with the Stipulation, Stemline will make reasonable efforts to assist Lead Counsel in obtained information concerning the identity of Settlement Class Members, including any names and

addresses of Settlement Class Members and nominees or custodians, that exist in the Company's transfer records. Stipulation, ¶7.6.

Second, Lead Counsel has engaged Strategic Claims Services ("SCS") to administer payments to Settlement Class Members. SCS is a well-known claims administrator with substantial experience in administering class action securities fraud settlements. *See, e.g.*, *In re Altair Nanotechnologies Sec. Litig.*, No. 14 CIV. 7828 (AT), 2016 WL 7647043, at *1 (S.D.N.Y. Jan. 22, 2016) (appointing SCS "to supervise and administer the notice procedure as well as the processing of claims"); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 184 (S.D.N.Y. 2012) ("In accordance with our direction, lead plaintiff's counsel retained [SCS] to supervise and administer the dissemination of the notice").

Third, the proposed distribution and Plan of Allocation are similar to the majority of securities fraud class action monetary settlement allocations. The proposed Notice instructs potential class members on how and when to submit Proofs of Claim to SCS. Upon receipt and confirmation that all claims are complete and a part of the Settlement Class (an "Authorized Claimant"), SCS shall determine each Authorized Claimant's Recognized Loss and allocate *pro rata* shares of the Net Settlement Fund based on the Authorized Claimant's Recognized Loss as compared to the total Recognized Losses of all Authorized Claimants. *See* Notice of Pendency and Proposed Settlement of Class Action. Funds will be disbursed to Authorized Claimants via check after approval from the Court, and SCS will make all reasonable and diligent efforts to have Authorized Claimants entitled to a distribution cash their distributions checks. *Id.* If after six months from the initial distribution any funds remain in the Net Settlement Fund, such funds shall be used to pay any amounts mistakenly omitted from the initial distribution, pay any additional Notice and Administrative Costs, and make a second distribution to Authorized Claimants if

16

economically feasible. *Id.; see In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *13 (S.D.N.Y. Nov. 7, 2007) (finding similar process fair and reasonable). These standard Notice, distribution and allocation procedures support a finding of effectiveness.

(c)     The Terms of the Proposed Award of Attorney's Fees

Both the United States Supreme Court and the Second Circuit recognize that "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Cent. States*, 504 F.3d at 249. "The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefiting from a lawsuit without contributing to its cost." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Additionally, an award of attorney's fees "encourage[s] skilled counsel to represent those who seek redress for damages inflicted on an entire class of persons, and to discourage future misconduct of a similar nature." *Aeropostale,* 2014 WL 1883494, at *11; *see also Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.").

Here, Lead Counsel intends to seek an award of attorney's fees in an amount equal to one-third of the Settlement Amount to be paid upon approval of the Court.[7] This fee request of 33-1/3% of the Settlement is well within the range of attorney's fee amounts awarded in securities class actions within the Second Circuit and elsewhere. *See, e.g.*, *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 367–68 (S.D.N.Y. 2002) (awarding 33-1/3% of $1.25 million settlement,

---

[7] *See In re Citigroup Inc. Bond Litig.*, 988 F. Supp. 2d 371, 373 (S.D.N.Y. 2013) (percentage of fund method "now firmly entrenched in the jurisprudence of this Circuit.") (citation omitted); *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method.").

plus $200,371.93 for costs and expenses); *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 CIV. 5587(PKL)(RL, 2003 WL 21136726, at *2 (S.D.N.Y. May 15, 2003) (awarding attorney's fees of 33-1/3% of $975,000 settlement, plus reimbursement of expenses); *In re Blech Sec. Litig.*, No. 94 CIV. 7696 (RWS), 2000 WL 661680, at *5–6 (S.D.N.Y. May 19, 2000) (awarding attorney's fees of 30% of $800,000 settlement, and $45,302.88 in costs); *Adair v. Bristol Tech. Sys., Inc.*, No. 97 CIV. 5874 RWS, 1999 WL 1037878, at *1, 3–4 (S.D.N.Y. Nov. 16, 1999) (awarding attorney's fees of 33% of $975,000 settlement, as well as $13,008.12 in costs); *see also*, NERA Economic Consulting's *Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review* (2018) at p. 42 (median attorney's fees of 30% for settlements under $5 million from 2012 through 2017).[8]

(d)     Any Agreement Required to be Identified Under Rule 23(e)(3)

The Stipulation indicates that a confidential Supplemental Agreement has been entered into between the Settling Parties regarding Defendants' right to terminate the Stipulation and Settlement if Settlement Class Members representing a certain amount or more of the alleged damaged securities file valid and timely requests for exclusion. *See* Stipulation, ¶10.5. Such confidential supplemental agreements are customary in settlements and "avoid the risk that one or more shareholders might use this knowledge to insist on a higher payout for themselves by threatening to break up the Settlement." *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) (approving confidentiality of opt-out termination agreement); *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2017 WL 4750628, at *5 (N.D. Cal. Oct. 20, 2017) (same); *In re Take Two Interactive Sec. Litig.*, No. 06

---

[8] https://www.nera.com/content/dam/nera/publications/2018/PUB_Year_End_Trends_Report_0118_final.pdf

CIV. 1131 (RJS), 2010 WL 11613684, at *11–12 (S.D.N.Y. June 29, 2010) (noting side letter agreement, preliminarily approving settlement).

### 4. The Settlement Treats Class Members Equitably

There are no "obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys)" justifying denial of preliminary approval. *In re Take Two*, 2010 WL 11613684, at *8. Here, Plaintiffs and all Settlement Class Members will receive their recoveries based on the same recognized loss calculation formula on a *pro rata* basis. *See Hi-Crush Partners*, 2014 WL 7323417, at *10 (approving plan as "fair, reasonable, and adequate" where it "allocates Recognized Loss based on the Hi-Crush price decline. . . . [A]pplied to units that were purchased between the time of Defendant's allegedly misleading [statements and corrective disclosure] and were not sold prior to that disclosure" noting that "[w]hen formulated by competent and experienced class counsel, a plan of allocation of net settlement proceeds need have only a reasonable, rational basis.") (internal citations omitted).

Plaintiffs intend to request reimbursement of not more than $1,000 each, to be approved by the Court. Such awards are routinely granted by courts. *See Dial Corp. v. News Corp.*, 317 F.R.D. 426, 438–39 (S.D.N.Y. 2016) (average range of standard incentive award is $2,500 to $85,000); *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 CIV. 7670 BSJJCF, 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts.") (citation omitted).

### C. **The Proposed Form of Notice and Notice Schedule Should be Approved**

#### 1. **The Proposed Form of Notice**

Notice of a proposed settlement must meet the requirements of Rules 23(c)(2) and 23(e), as well as requirements under the Exchange Act and the Due Process Clause of the United States Constitution. *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182 (S.D.N.Y. 2014); 15 U.S.C.A. § 78u-4(a)(7). Rule 23(c)(2) directs that the notice be "the best notice that is practicable under the circumstances" (Fed. R. Civ. P. 23(c)(2)(B)) and Rule 23(e) directs "notice in a reasonable manner" (Fed. R. Civ. P. 23(e)(1)). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements." *Wal-Mart*, 396 F.3d at 114. And, "[c]onformity with the requirements of Rule 23(c)(2) fulfills the due process mandate." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 438 (S.D.N.Y. 2004). "If the average class member understands 'the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings," then the notice is adequate." *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *3 (S.D.N.Y. Dec. 14, 2017) (quoting *Weinberger*, 698 F.2d at 70).

Here, the proposed Notice, attached as Exhibit A-1 to the Stipulation, satisfies these standards. The Preliminary Approval Order directs that within sixteen (16) calendar days after entry of the Preliminary Approval Order, Class Counsel shall cause the Notice to be mailed to all Settlement Class Members who can be identified with reasonable effort. The proposed Notice includes the information required by Rule 23(c)(3) and the Exchange Act, such as the Settlement Class definition, that a Settlement Class Member may appear through counsel, the time and manner for requesting an exclusion, a statement of recovery, and the reasons for the Settlement. *See In re Take Two*, 2010 WL 11613684, at *12. In addition to mailing the Notice to Settlement Class

members, the Notice will be posted on the Claims Administrator's website and a Summary Notice

will be published on *GlobeNewswire* and in *Investor's Business Daily*.

Accordingly, the form, content, and methods of dissemination of the Notice meet all of the

requirements of due process, the Exchange Act, and the Federal Rules of Civil Procedure.

### 2.   The Proposed Schedule

Plaintiffs respectfully request that the Court approve the following proposed schedule for

finalizing the Settlement:

| EVENT | PROPOSED DATE |
|---|---|
| Deadline for mailing the Notice and Proof of Claim and Release Form | Not later than 16 calendar days after entry of the Preliminary Approval Order |
| Deadline for posting the Stipulation and its exhibits, the Preliminary Approval Order, and the Notice on the Claim's Administrator's website | Not later than 16 calendar days after entry of the Preliminary Approval Order |
| Deadline for publishing the Summary Notice | Not later than 16 calendar days after entry of the Preliminary Approval Order |
| Deadline for filing of papers in support of the Settlement, the Plan of Allocation, and Fee and Expense Application | 28 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests or objections | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing responses to any objections or in further support of the Settlement, the Plan of Allocation, and the Fee and Expense Application | 7 calendar days prior to the Settlement Hearing |
| Deadline for filing of proof of mailing of Notice and Proof of Claim and Release Form, proof of publication of Summary Notice | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing | To be determined by the Court |
| Deadline for submitting Proof of Claim and Release Forms | 30 calendar days after the Settlement Hearing |

## VI.    CONCLUSION

Based on the foregoing reasons, Plaintiffs respectfully request that the Court: (1) certify the Settlement Class for the purpose of settlement only, appointing Plaintiffs as Class Representatives and Lead Counsel and Class Counsel; (2) preliminary approve the proposed Settlement; (3) approve the proposed form and manner of Notice and schedule for finalizing Settlement; and (4) schedule a final Settlement Hearing.

Dated:  March 12, 2019                              Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ *Phillip Kim*
Laurence M. Rosen
Phillip Kim
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone:  (212) 686-1060
Fax:  (212) 202-3827
Email:  lrosen@rosenlegal.com
         pkim@rosenlegal.com

and

Jacob A. Goldberg
Leah Heifetz-Li
101 Greenwood Avenue, Suite 440
Jenkintown, PA  19046
Telephone:  215-600-2817  Ext. 501
Fax:  212-202-3827
Email:  jgoldberg@rosenlegal.com
         lheifetz@rosenlegal.com

**POMERANTZ LLP**

/s/ *Jeremy A. Lieberman*
Jeremy A. Lieberman
Austin P. Van
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
         avan@pomlaw.com

*Co-Lead Counsel for Lead Plaintiffs*

**GLANCY PRONGAY & MURRAY LLP**
Kara M. Wolke
Alexa J. Mullarky
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:   (310) 201-9160
info@glancylaw.com

*Additional Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 12, 2019, I electronically filed the foregoing **LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** with the Clerk of Court using the CM/ECF system, which will send notification of such to all CM/ECF participants.

**THE ROSEN LAW FIRM, P.A.**

/s/ *Jacob A. Goldberg*
Jacob A. Goldberg
101 Greenwood Avenue, Suite 440
Jenkintown, PA  19046
Phone: (215) 600-2817
Fax: (212) 202-3827

***Co-Lead Counsel for Lead Plaintiffs***