**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE STEMLINE THERAPEUTICS, INC. SECURITIES LITIGATION | Master File No. 1-17-CV-00832-PAC |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND**
**PLAN OF ALLOCATION AND FINAL CERTIFICATION OF SETTLEMENT CLASS**

## TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................... 1

II.  SUMMARY OF THE LITIGATION ................................................................. 3

III.   THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ........................... 4

  A.  The Settlement Process Was Procedurally Fair ................................................. 5

    1.  Plaintiffs and Plaintiffs' Counsel Adequately Represented the Settlement Class ........... 5

    2.  Arm's-Length Negotiations ........................................................................ 6

  B.  The Proposed Settlement Is Substantively Fair ................................................. 8

    1.  The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement ........................................................................................ 9

    2.  The Reaction of the Settlement Class to the Settlement ................................. 11

    3.  The Stage of the Proceedings are Sufficiently Advanced ............................... 12

    4.  The Risks of Establishing Liability and Damages and Maintaining the Class Action Through Trial Support Approval of the Settlement ....................................... 13

    5.  Defendants' Ability to Withstand a Greater Judgement ................................. 16

    6.  The Settlement Amount is Reasonable in Light of the Best Possible Recovery and the Attendant Risks of Litigation ................................................................... 17

    7.  The Settlement Meets All the Requirements of Rule 23(e) ............................ 19

IV.  THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED ................................................................................................. 20

V.    THE NOTICE TO THE SETTLEMENT CLASS SATISFIED RULE 23 AND DUE

      PROCESS ........................................................................................................... 22

VI.   FINAL CERTIFICATION OF THE SETTLEMENT CLASS ............................................ 23

VII.  CONCLUSION ..................................................................................................... 24

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alloy, Inc. Sec. Litig.*,
No. 03 Civ. 1597 (WHP), 2004 U.S. Dist. LEXIS 24129 (S.D.N.Y. Dec. 2, 2004) ............... 10

*AOL Time Warner, Inc. Sec. & ERISA Litig.*,
No. 02 Civ. 6302 (SWK), 2006 U.S. Dist. LEXIS 17588
(S.D.N.Y. Apr. 6, 2006) ......................................................................................... 9, 11, 14, 17

*Arbuthnot v. Pierson*,
607 F. App'x 73 (2d Cir. 2015) ......................................................................................... 22, 23

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
No. 2010 U.S. Dist. LEXIS 79679 (S.DN.Y. Aug. 5, 2010) .................................................. 16

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981) ............................................................................................................... 5, 14

*Chatelain v. Prudential-Bache Sec., Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992) ........................................................................................... 16

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ....................................................................................... 5, 9, 17, 18

*City of Providence v. Aéropostale, Inc.*,
No. 11 Civ. 7132 (CM) (GWG), 2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9, 2014) ...... 11

*Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................ 6, 14, 15, 21

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ................................................................................................. 7, 17

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005) ................................................................................................................. 15

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ................................................................................................................. 22

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ................................................................................................ 10

*Fishoff v. Coty, Inv.*,
No. 09 Civ. 628 (SAS), 2010 U.S. Dist. LEXIS 6242 (S.D.N.Y. Jan. 25, 2010) .................... 14

*Fleisher v. Phoenix Life Ins. Co.*,
　No. 11-cv-8405, 2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sept. 9, 2015) ............................ 7

*Grant v. Bethlehem Steel Corp.*,
　823 F.2d 20 (2d Cir. 1987) ................................................................................................ 12

*Hefler v. Wells Fargo & Co.*,
　No. 16-civ-05479 (JST), 2018 U.S. Dist. LEXIS 150292 (N.D. Cal. Sept. 4, 2018) .............. 20

*Hicks v. Morgan Stanley & Co.*,
　No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005) ............... 11

*In re "Agent Orange" Prod. Liab. Litig.*,
　597 F. Supp. 740 (E.D.N.Y. 1984) ..................................................................................... 19

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
　298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................................. passim

*In re Am. Bank Note Holographics, Inc.*,
　127 F. Supp. 2d 418 (S.D.N.Y. 2001) ........................................................................... 10, 22

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
　689 F.3d 229 (2d Cir. 2012) .............................................................................................. 24

*In re Austrian & German Bank Holocaust Litig.*,
　80 F. Supp. 2d 164 (S.D.N.Y. 2000) .................................................................................. 13

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
　909 F. Supp. 2d 259 (S.D.N.Y. 2012) ......................................................................... passim

*In re Blech Sec. Litig.*,
　No. 94 Civ. 7696 (RWS), 2000 U.S. Dist. LEXIS 6920 (S.D.N.Y. May 22, 2000) ................. 19

*In re BP p.l.c. Sec. Litig.*,
　852 F. Supp. 2d 767 (S.D. Tex. 2012) ................................................................................ 10

*In re Citigroup Inc. Securities Litigation*,
　965 F. Supp. 2d ............................................................................................................... 6, 9

*In re Flag Telecom Holdings*,
　No. 02-CV-3400 (CM)(PED), 2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 5, 2010)... 9, 16

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
　279 F.R.D. 151 (S.D.N.Y. 2011) ............................................................................. 17, 18, 19

*In re Hi-Crush Partners L.P. Sec. Litig.*
　2014 U.S. Dist. LEXIS 177175 (S.D.N.Y. Dec. 19, 2014) ................................................ 9, 21

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ...................................................................... 9, 13, 21

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009) ........................................................................ 18

*In re IPO Sec. & Deriv. Litig.*,
   MDL No. 12-2389, 2015 U.S. Dist. LEXIS 152668 (S.D.N.Y. Nov. 9, 2015) ........................ 15

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
   233 F.R.D. 306 (E.D.N.Y. 2006) ........................................................................ 9, 16

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................... 11

*In re Marsh & McLennan Cos., Sec. Litig.*,
   No. 04 Civ. 8144, 2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009) ........................ 21

*In re Medical X-Ray Film Antitrust Litig.*,
   No. CV-93-5904, 1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998) ........................... 18

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .............................................................................. 18

*In re NQ Mobile, Inc. Secs. Litig.*,
   No. 13-cv-07608-WHP, 2016 U.S. Dist. LEXIS 189606 (S.D.N.Y. Mar. 11, 2016) .................. 5

*In re Symbol Techs., Inc. Sec. Litig.*,
   05-CV-3923 (DRH) (AKT), 2015 U.S. Dist. LEXIS 82756 (E.D.N.Y. June 25, 2015) ........... 6

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) .............................................................................. 20

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................... 5, 7, 8, 21

*In re Veeco Instruments Secs. Litig.*,
   No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629 (S.D.N.Y. Nov. 7, 2007) ............. 22

*In re Virtus Inv. Partners, Inc.*,
   No. 15-cv-1249, 2018 U.S. Dist. LEXIS 205304 (S.D.N.Y. Dec. 4, 2018) ........................... 14

*In re Warner Comm. Sec. Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1985) ........................................................................... 15

*Lyons v. Marrud, Inc.*,
   No. 66 Civ. 415, 1972 U.S. Dist. LEXIS 13401 (S.D.N.Y. June 6, 1972) ................................ 8

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)...................................................................... 16

*Pantelyat v. Bank of Am., N.A.*,
    No. 16-cv-8964 (AJN), 2019 U.S. Dist. LEXIS 15714 (S.D.N.Y. Jan. 31, 2019) ................... 17

*Vaccaro v. New Source Energy Partners L.P.*,
    No. 15 CV 8954 (KMW), 2017 U.S. Dist. LEXIS 205785
    (S.D.N.Y. Dec. 14, 2017)....................................................................... 12, 13, 15, 24

*Van Oss. v. New York*,
    No. 10 Civ. 7524 (SAS), 2012 U.S. Dist. LEXIS 91684 (S.D.N.Y. July 2, 2012).................... 8

*-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)................................................................................. passim

**Rules**

Fed. R. Civ. P. 23 ........................................................................................ 1, 2, 4, 22

Fed. R. Civ. P. 23(a) ........................................................................................ 2, 24

Fed. R. Civ. P.  23(b) ........................................................................................ 2, 24

Fed. R. Civ. P. 23(c)(2) ..................................................................................... 16, 22

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................... 22

Fed. R. Civ. P.  23(e) ................................................................................. 4, 19, 20, 22

Fed. R. Civ. P. 23(e)(1)........................................................................................... 22

Pursuant to Federal Rule of Civil Procedure ("Rule") 23, Lead Plaintiffs Adam Ludlow, Daljit Singh, and Kenneth Walsh (collectively, "Lead Plaintiffs") and Representative Plaintiff Marion Beeler ("Beeler," and together with Lead Plaintiffs, "Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submit this memorandum of law in support of their motion for final approval of the proposed Settlement resolving all claims asserted in this securities class action (the "Action") against Defendants and for approval of the proposed plan of allocation of the proceeds of the Settlement (the "Plan of Allocation").[1]

## I.   INTRODUCTION

Subject to this Court's approval, the proposed Settlement resolves all claims alleged in the Action against all Defendants in exchange for a $680,000 cash payment (the "Settlement Amount") to the Settlement Class, which has been deposited into an Escrow Account in accordance with the terms of the Stipulation.  Plaintiffs respectfully submit that the Settlement is an excellent result for the Settlement Class.

The Settlement is the result of Plaintiffs' and their counsel's vigorous litigation efforts and extensive arm's-length negotiations among the parties, and is fair and reasonable in light of the strengths and weakness of the case and risks and expenses of continued litigation.  By the time the Settlement had been reached, Plaintiffs' Counsel had, among other things: (i) conducted an extensive investigation into the claims asserted in the Action, including a detailed review and

---

[1]  Unless otherwise noted, all capitalized terms defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated March 11, 2019, (the "Stipulation") (ECF No. 67) or in the accompanying Joint Declaration of Jacob A. Goldberg and Austin P. Van in support of (1) Motion for Final Approval of Class Action Settlement and Plan of Allocation, and Final Certification of the Settlement Class, and (2) Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Awards for Lead Plaintiffs (the "Joint Declaration" or "Joint Decl.").  All citations to "¶" and "Ex. ___" herein refer, respectively, to paragraphs in, and Exhibits to, the Joint Declaration.

analysis of SEC filings, press releases, conference call transcripts, analyst reports, news reports and other public information, and consultation with damages experts; (ii) researched and prepared the detailed Amended Class Action Complaint for Violations of Federal Securities Laws (the "Amended Complaint") (ECF No. 31) based on the investigation; (iii) opposed Defendants' motions to dismiss (ECF No. 52); (iv) researched and prepared an opening appellate brief on the Court's dismissal of the Amended Complaint; and (v) engaged in a mediation process overseen by a highly experienced third-party mediator through the Second Circuit's mediation and settlement program (CAMP) which involved two mediation sessions, and months of follow-up negotiations. As a result, Plaintiffs and Plaintiffs' Counsel had a thorough understanding of the strengths and weaknesses of the case, enabling them to appropriately evaluate the Settlement's fairness, reasonableness, and adequacy.

While Plaintiffs' believe their claims have merit, this Court granted Defendants' motions to dismiss the Amended Complaint in their entirety.  There is no guarantee of success on appeal or remand, and even if Plaintiffs successfully defeated the motions to dismiss, they would face substantial risks and expense in demonstrating, among other things, Defendants' liability and damages.

For the reasons discussed herein, Plaintiffs and their counsel believe that the proposed Settlement is in the best interests of the Settlement Class and is fair, reasonable, and adequate.  It satisfies the requirements of Rule 23 and provides a significant recovery for the Settlement Class. Additionally, to date, no objections or exclusions have been received from any Settlement Class Member.  ¶ 6.  Accordingly, Plaintiffs respectfully request that the Court certify the Settlement Class for purposes of settlement only pursuant to Rules 23(a) and 23(b)(3) and grant final approval of the Settlement.

2

Plaintiffs also request that the Court approve the proposed Plan of Allocation of the Net Settlement Fund, as set forth in the Notice distributed to the Settlement Class in accordance with this Court's Order Granting Lead Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order") (ECF No. 72).   The Plan of Allocation governs how Settlement Class Members' claims will be calculated and, ultimately, how money will be distributed to valid claimants.   The Plan of Allocation fairly distributes the Net Settlement Fund in accordance with the claims in this litigation, providing each Settlement Class Member who files a valid claim a *pro rata* share based upon his or her recognized loss.   It is substantively similar to plans that have been approved and used to allocate recoveries in other securities class actions. Accordingly, the Plan of Allocation is fair, reasonable, and adequate and should be approved.

## II.   SUMMARY OF THE LITIGATION[2]

This is a federal securities class action alleging violations of Sections 11, 12, and 15 of the Securities Act of 1933 (the "Securities Act") and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder against defendants Stemline Therapeutics, Inc. ("Stemline" or the "Company"), Ivan Bergstein, Ron Bentsur, Eric L. Dobmeier, Alan Forman, David Gionco, Kenneth Zuerblis, and Jefferies LLC (collectively, "Defendants").   ¶ 11.   Plaintiffs allege that between January 20, 2017 and February 1, 2017, inclusive (the "Settlement Class Period"), Defendants made material misrepresentations and/or omitted material facts related to the clinical trial of one of Stemline's drug candidates,

---

[2]   For the sake of brevity, the Court is respectfully referred to the Joint Declaration for a detailed description of, among other things:  the history of the Action; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; and the terms of the Plan of Allocation.

including in connection with the secondary public offering of common stock on or about January 20, 2017 (the "SPO").  ¶ 12.

Beginning on February 3, 2017, multiple securities class action complaints were filed in the United States District Court for the Southern District of New York alleging violations of securities laws by Defendants.   ¶ 16.   On April 25, 2017, the Court ordered the actions consolidated, appointing Lead Plaintiffs, and appointing The Rosen Law Firm, P.A. and Pomerantz LLP as Co-Lead Counsel.  ¶ 17.  On June 26, 2017, Lead Plaintiffs filed the Amended Complaint which Defendants moved to dismiss on August 25, 2017 (ECF Nos. 42-46).  ¶¶ 18-20.  After Plaintiffs' opposition and Defendants' reply papers (ECF Nos. 56-57), on March 15, 2018, the Court granted Defendants' motions to dismiss in their entirety (ECF No. 58).  ¶ 21.

Plaintiffs appealed the Court's order, filing their opening appellate brief with the Second Circuit Court of Appeals on June 11, 2018.  ¶ 22.  On June 27, 2018, the Settling Parties reached a settlement in principle after participating in the Second Circuit's mediation and settlement program.  ¶ 24.  On March 12, 2019, Lead Plaintiffs' filed their Motion for Preliminary Approval of Class Action Settlement (ECF Nos. 67-69), which this Court approved on June 13, 2019.  ¶ 25.

## III.   THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

Under Rule 23(e), "[t]he court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses."[3]  A court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).[4]  In determining whether to approve a settlement,

---

[3]   The argument herein includes application of the new amendments to Rule 23, effective December 1, 2018, which for the most part overlap with the Second Circuit's *Grinnell* factors, as set forth below.

[4] Unless otherwise noted, citations and quotations are omitted and emphasis is added.

"the Court should consider both the process by which the settlement was negotiated and the substantive fairness of the agreed-upon terms in light of the circumstances of the litigation." *In re NQ Mobile, Inc. Secs. Litig.*, No. 13-cv-07608-WHP, 2016 U.S. Dist. LEXIS 189606, at *6 (S.D.N.Y. Mar. 11, 2016).   As noted by both the Supreme Court and the Second Circuit, in determining the fairness of a settlement, courts should "not decide the final merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) (similar).   Further, "[t]here is a 'strong judicial policy in favor of settlements, particularly in the class context' and 'compromise' is 'encouraged by the courts and favored by public policy.'"   *Id.*; *see also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997) (while "[t]he decision to grant or deny [settlement] approval lies squarely within the discretion of the trial court, . . . this discretion should be exercised in light of the general judicial policy favoring settlement").   The Settlement here is fair, adequate, and reasonable and not a product of collusion and should therefore be approved.

### A.   The Settlement Process Was Procedurally Fair

#### 1.   Plaintiffs and Plaintiffs' Counsel Adequately Represented the Settlement Class

Plaintiffs and Plaintiffs' Counsel have zealously pursued the Settlement Class's interests throughout this litigation.   Prior to settlement negotiations, Plaintiffs and Plaintiffs' Counsel conducted an extensive review of all relevant SEC filings and other publicly-available information for Stemline; interviewed third-party witnesses; prepared the Amended Complaint; briefed Defendants' motions to dismiss the Amended Complaint; consulted with experts; and prepared the opening appellate brief on Defendants' motions to dismiss.   *See* ¶¶ 5, 31.   Thus, Plaintiffs and

Plaintiffs' Counsel were sufficiently informed of the case's strengths and weaknesses, enabling them to appropriately evaluate the proposed Settlement's fairness, reasonableness, and adequacy. *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 177 (S.D.N.Y. 2014) (noting focus is on plaintiffs' ability to evaluate case and settlement and finding plaintiffs were able to do so although "no merits discovery occurred"); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("Plaintiffs' counsel appear to have scrutinized the facts of the Actions from the earliest stages of the litigation and developed an informed basis from which to negotiate a reasonable compromise.").

Further, Plaintiffs' interests are not in conflict with those of the Settlement Class.  Plaintiffs and the Settlement Class Members all purchased shares of Stemline securities based on the same allegedly materially false and misleading statements or omissions made by Defendants, were allegedly damaged as a result, and have an interest in obtaining the largest recovery possible.  *See In re Symbol Techs., Inc. Sec. Litig.*, 05-CV-3923 (DRH) (AKT), 2015 U.S. Dist. LEXIS 82756, at *19 (E.D.N.Y. June 25, 2015) ("where, as here, the alleged frauds are brought under the same causes of action and where [the] frauds resulted from misinformation disseminated in financial statements, the Court does not find a class conflict").  And, as discussed further below, neither Plaintiffs nor any other Settlement Class Member is provided preferential treatment under the Settlement with the Net Settlement Fund being allocated to Authorized Claimants on a *pro rata* basis based on the size of each Authorized Claimants' Recognized Loss.  ¶ 50; *In re Citigroup Inc. Securities Litigation*, 965 F. Supp. 2d at 386–87.

### 2.    Arm's-Length Negotiations

Courts in the Second Circuit recognize that settlements reached after arm's-length negotiations between experienced counsel are afforded a presumption of fairness.  *See, e.g.*, *PaineWebber*, 171 F.R.D. at 125 ("So long as the integrity of the arm's length negotiation process

is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation."); *Wal-Mart*, 396 F.3d at 116 (similar); *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405, 2015 U.S. Dist. LEXIS 121574, *17 (S.D.N.Y. Sept. 9, 2015) (courts should give "proper deference to the private consensual decision of the parties" and bear in mind "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation").  Additionally, a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *Fleisher*, 2015 U.S. Dist. LEXIS 121574, at *21 ("The extensive participation of an experienced mediator also 'reinforces that the Settlement agreement is non-collusive.'") (collecting cases).

The Settlement here was the result of vigorous arm's-length negotiations between parties knowledgeable about the facts and risks of this litigation before an experienced mediator.  ¶ 30. Settlement negotiations did not commence until after Plaintiffs' Counsel engaged in an extensive investigation to understand the strengths and weaknesses of the case as detailed above.  The Settling Parties participated in two mediation sessions with Kathleen M. Scanlon, Chief Circuit Mediator.  *Id.*, ¶ 23.  The Settling Parties also engaged in several rounds of additional telephonic and written discussions before reaching the settlement in principle. *Id.*  Following those negotiations, the Settling Parties negotiated a term sheet, then ultimately, the Stipulation.  ¶ 24. The extensive and arm's-length nature of the settlement negotiations and the involvement of an experienced mediator support the conclusion that the Settlement is fair, adequate, and reasonable.

In addition, Plaintiffs' Counsel and additional counsel are nationally-recognized law firms experienced in securities litigation and class actions.  ¶ 64, Exs. 5-8.   Defendants are also

represented by prominent, experienced law firms.  ¶ 67.  *See Lyons v. Marrud, Inc.*, No. 66 Civ. 415, 1972 U.S. Dist. LEXIS 13401, at *5 (S.D.N.Y. June 6, 1972) ("[E]xperienced and competent counsel have assessed these problems and the probability of success on the merits.  They have concluded that compromise is well-advised and necessary.  The parties' decision regarding the respective merits of their positions has an important bearing on this case."); *see also PaineWebber*, 171 F.R.D. at 125  ("great weight is accorded to the recommendations of counsel, who are most clearly acquainted with the facts of the underlying litigation").

Accordingly, these facts strongly weigh in favor of affording the Settlement a presumption of fairness and granting final approval.  *See Van Oss. v. New York*, No. 10 Civ. 7524 (SAS), 2012 U.S. Dist. LEXIS 91684, at *3 (S.D.N.Y. July 2, 2012) (finding "a strong presumption of fairness attaches because the Settlement was reached by experienced counsel after extensive arm's length negotiations").

## B.     The Proposed Settlement Is Substantively Fair

In determining the substantive fairness and whether to finally approve a class action settlement, courts in the Second Circuit consider the following factors:  (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risk of litigation.  *Grinnell*, 495 F.2d at 463.  "All nine factors need not be satisfied, rather the court should consider the totality of these factors in light of the particular circumstances."  *In re Hi-Crush Partners L.P. Sec. Litig.*, No 12-Civ-8557 (CM), 2014 U.S. Dist. LEXIS 177175, at *14 (S.D.N.Y. Dec. 19, 2014); *see also In*

*re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) (similar).   The Settlement merits approval under *Grinnell*.

       **1.**       **The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement**

"Courts consistently have held that the expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement."   *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 316 (E.D.N.Y. 2006).   In general, "the more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court."   *Citigroup*, 965 F. Supp. 2d at 381-82.   This is particularly true in securities class actions where "federal courts . . .  have long recognized that such litigation is notably difficult and notoriously uncertain."   *IMAX*, 283 F.R.D. at 189; *see also In re Flag Telecom Holdings*, No. 02-CV-3400 (CM)(PED), 2010 U.S. Dist. LEXIS 119702, at *43 (S.D.N.Y. Nov. 5, 2010) ("[s]ecurities class actions are generally complex and expensive to prosecute").

      Further litigation would have required substantial additional expenditures of time and money, involving complex issues of law and fact, with a significant risk of a lower recovery, or no recovery at all.   *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 Civ. 6302 (SWK), 2006 U.S. Dist. LEXIS 17588, at *33 (S.D.N.Y. Apr. 6, 2006) ("In addition to the complex issues of fact involved in this case, the legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.").   Notably, if litigation were to proceed, Plaintiffs would first have to prevail on the outstanding appeal of the motions to dismiss for which there is no guarantee of success.   ¶ 32. Defendants argued, and this Court agreed, that no materially false statements were made by the Defendants.   ¶ 33.   To succeed on the appeal, the Amended Complaint must satisfy the strict

pleading standards of the PSLRA which "requires a plaintiff to plead a complaint of securities fraud with an unprecedented degree of specificity and detail" and is "not an easy standard to comply with." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *see also In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) (noting that "authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading"). Furthermore, in the event Plaintiffs overcame the long odds of securing a reversal from the Second Circuit, Defendants' arguments pertaining to standing and scienter would have to be addressed and it is well-known that scienter is difficult to prove in securities fraud cases. *See In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001).

Even securing an unlikely Second Circuit reversal would by no means end Plaintiffs' difficulties. After overcoming the motions to dismiss, extensive fact and expert discovery would likely ensue, as well as a contested class certification motion, summary judgment motions, litigating *Daubert* motions, proving Plaintiffs' claims at trial and post-trial motion practice. Throughout each phase of litigation, Plaintiffs would undoubtedly have faced a robust defense from Defendants' experienced counsel. *In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 U.S. Dist. LEXIS 24129, at *5-6 (S.D.N.Y. Dec. 2, 2004) ("complex security fraud issues were likely to be litigated aggressively, at substantial expense to all parties"). Moreover, if this action were litigated to conclusion, including trial and appeals, it would likely be years before final resolution, with the addition of extensive costs. *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138–39 (S.D.N.Y. 2010) ("even if the Class were to win a judgment at trial, the additional delay of trial, post-trial motions and appeals could deny the Class any actual recovery for years, further reducing its value").

Lastly, there is a very significant risk that further litigation might yield a smaller recover – or no recovery at all – several years in the future.  *See, e.g.*, *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *16 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

Given the complexities and uncertainties inherent in continued litigation, the proposed cash Settlement at this time results in an immediate and substantial recovery and Plaintiffs submit is in the best interests of the Settlement Class.  *Advanced Battery*, 298 F.R.D. at 176 ("the present value of a certain recovery at this time, compared to the slim chance for a greater one down the road, supports approval of a settlement that eliminates the expense and delay of continued litigation, as well as the significant risk that the Class could receive no recovery").

## 2.    The Reaction of the Settlement Class to the Settlement

The reaction of the Settlement Class to the Settlement is a significant factor for the Court to weigh when considering its adequacy.  *City of Providence v. Aéropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 U.S. Dist. LEXIS 64517, *15-16 (S.D.N.Y. May 9, 2014); *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012).  "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."  *Wal-Mart*, 396 F.3d at 118; *AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *36 (finding that the "small number of objections and low percentage of opt-outs here strongly favor the Settlement").

The overwhelming support of Settlement Class Members here strongly evidences that the Settlement is fair, reasonable, and adequate.  Pursuant to the Preliminary Approval Order,  Court-appointed Claims Administrator Strategic Claims Services ("SCS") has disseminated 2,176 copies of the Notice and the Proof of Claim and Release Form (together, the "Notice Packet") to potential

Settlement Class Members.  *See* Ex. 1 (Declaration of Sarah Evans Concerning (I) The Mailing of the Notice of Pendency and Proposed Settlement of Class Action and Proof of Claim and Release Form, (II) The Publication of the Summary Notice of Pendency and Proposed Class Action Settlement, and (III) The Exclusion Requests Received ("Evans Decl.")) at ¶ 6.  SCS also published the Summary Notice on *GlobeNewswire* and in *Investor's Business Daily*; and established and currently maintains a website dedicated to the Settlement.  *Id.* at ¶¶ 7, 9.  Although the opt-out/exclusion and objections deadlines have not yet passed, to date no Settlement Class Members have requested an exclusion and no Settlement Class Members have objected to the Settlement.  *Id.* at ¶¶; Evans Decl. ¶ 12.

The Settlement Class's favorable reaction supports approving the Settlement.  *See Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 22–23 (2d Cir. 1987) (finding no abuse of discretion where district court approved settlement with 36% of the class objecting); *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 U.S. Dist. LEXIS 205785, at *13 (S.D.N.Y. Dec. 14, 2017) ("The small number of objectors weighs in favor of final approval."); *Bear Stearns*, 909 F. Supp. 2d at 267 ("Given the absence of significant exclusion or objection--the rate of exclusion is 5.1% and the rate of objection is less than 1%--this factor weighs strongly in favor of approval.").

### 3.     The Stage of the Proceedings are Sufficiently Advanced

The stage of the proceedings supports final approval of the Settlement.  The purpose of this consideration is to ensure that "the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of the plaintiff's causes of action for purposes of settlement." *Bear Stearns*, 909 F. Supp. 2d at 267.  "To approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery . . . it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of

the Settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000); *see also New Source*, 2017 U.S. Dist. LEXIS 205785 at *15 (S.D.N.Y. Dec. 14, 2017) (finding factor satisfied although no formal discovery); *IMAX*, 283 F.R.D. at 190 ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties.").

Prior to Settlement, Plaintiffs and Plaintiffs' Counsel, *inter alia*: (i) conducted a detailed investigation of the claims, including a review of all relevant public filings and publicly-available information; (ii) conducted interviews with certain third-party witnesses; (iii) prepared the detailed Amended Complaint based on this investigation; (iv) opposed Defendants' motions to dismiss, including extensive review and analysis of the law governing the claims and potential defenses; (v) consulted with retained experts regarding damages and loss causation; (vi) prepared Plaintiffs' opening appellate brief on the motions to dismiss and accompanying joint appendix and (vii) participated in two mediation sessions. ¶ 31.  Accordingly, Plaintiffs and Plaintiffs' Counsel had a clear view of the strengths and weaknesses of their claims and the benefits of the proposed Settlement and were well-positioned to consider the Settlement without formal discovery. *See, e.g.*, *Advanced Battery*, 298 F.R.D. at 177 (where "no merits discovery occurred," counsel that had conducted their own investigation, engaged in detailed briefing, and conducted targeted due diligence discovery were "knowledgeable with respect to possible outcomes and risks in this matter, and thus, able to recommend the Settlement").

> **4.    The Risks of Establishing Liability and Damages and Maintaining the Class Action Through Trial Support Approval of the Settlement**

"Courts generally consider the fourth, fifth, and sixth *Grinnell* factors together." *In re Virtus Inv. Partners, Inc.*, No. 15-cv-1249, 2018 U.S. Dist. LEXIS 205304, at *6 (S.D.N.Y. Dec.

4, 2018).  In analyzing the risks of establishing liability, the Court must not "decide the merits of the case," *Am. Brands*, 450 U.S. at 88 n.14, but rather "assess the risks of the litigation against the certainty of recovery under the proposed settlement."  *Global Crossing*, 225 F.R.D. at 459.  Courts should, therefore, "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case."  *Id.*

"The difficulty of establishing liability is a common risk of securities litigation."  *AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *39 (S.D.N.Y. Apr. 6, 2006).  Although Plaintiffs' Counsel believes that Plaintiffs would prevail on all claims, Plaintiffs' Counsel acknowledges that continued litigation would expose the Settlement Class to a risk of no recovery, or a much lower recovery.  Plaintiffs would have to establish falsity, materiality, and scienter.  Indeed, scienter is often considered "the most difficult and controversial aspect of a securities fraud claim." *Fishoff v. Coty, Inv.*, No. 09 Civ. 628 (SAS), 2010 U.S. Dist. LEXIS 6242, at *5 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011); *see also AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *40 ("avoiding dismissal at the pleading stage does not guarantee that scienter will be adequately proven at trial").  As demonstrated by Defendants' motions to dismiss, Defendants' vehemently dispute, among other things, that any of the alleged misstatements were false or misleading.  ECF Nos. 44, 46; *In re IPO Sec. & Deriv. Litig.*, MDL No. 12-2389, 2015 U.S. Dist. LEXIS 152668, at *13 (S.D.N.Y. Nov. 9, 2015) ("Because Plaintiffs' ability to establish the liability of Defendants is far from certain, this factor weighs in favor of settlement approval.").

Defendants have also contested Plaintiffs' standing to assert the Securities Act claims (ECF Nos. 44, 46), and would likely have raised additional arguments and defenses.  ¶ 34.  Defendants would have likely argued that they are subject to a due diligence defense and claimed that they did not have contemporaneous knowledge of the recurrence of the severe side effect of SL-401 at the

time the Prospectus was issued.  Whether Plaintiffs would have prevailed in response to these, and likely other, arguments at the pleading stage, summary judgment, and trial was far from certain.  ¶ 36.

Further, Plaintiffs would have encountered significant causation and damages defenses. Plaintiffs would have to show that the alleged securities violations caused Plaintiffs' loss.  *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345–46 (2005); *see also New Source*, 2017 U.S. Dist. LEXIS 205785, at *16 (noting that "Plaintiffs may have been unable to prove that Defendants' misleading statements were the cause of Plaintiffs' losses").  Establishing loss-causation and damages is a "complicated and uncertain process, typically involving conflicting expert opinion[s]."  *Global Crossing*, 225 F.R.D. at 459 (S.D.N.Y. 2004).

Moreover, loss causation and damages disputes would most likely lead to a "battle of the experts" where it is "virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions."  *In re Warner Comm. Sec. Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *Luxottica Group*, 233 F.R.D. at 311 (similar).  A "jury could be swayed by experts for the Defendants, who [c]ould minimize the amount of Plaintiffs' losses."  *Bear Stearns*, 909 F. Supp. 2d at 268; *see also Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 365 (S.D.N.Y. 2002) (same); *Flag Telecom*, 2010 U.S. Dist. LEXIS 119702, at *54 ("The jury's verdict . . . would . . . depend on its reaction to the complex testimony of experts, a reaction that is inherently uncertain and unpredictable."). Accordingly, the certain, immediate relief afforded by the Settlement in light of the risks of establishing liability and damages supports approval of the Settlement.

The risks of maintaining the Action as a class action through trial also support approval of the Settlement. While Plaintiffs and Plaintiffs' Counsel believe they would prevail on a class certification motion, Defendants would likely raise vigorous challenges, and such disputes "could well devolve into yet another battle of the experts." *Bear Stearns*, 909 F. Supp. 2d at 268. If successful, Defendants could move to decertify all or part of the class at any time. *See* Fed. R. Civ. P. 23(c)(2); *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 2010 U.S. Dist. LEXIS 79679, at *12 (S.DN.Y. Aug. 5, 2010) ("Because there is a real risk that class certification may not be granted, or, if granted, it may later be rejected on appeal or decertified, the Court concludes that this factor also weights in favor of approving the proposed settlement."); *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification. This factor indicates that settlement is advantageous to the class at this time."). Thus, the fact that "even the process of class certification would have subjected Plaintiffs to considerably more risk than the unopposed certification that was ordered for the sole purpose of the Settlement" supports approval here. *AOL Time Warner*, 22006 U.S. Dist. LEXIS 17588, at *41.

### 5.    Defendants' Ability to Withstand a Greater Judgement

A defendant is not required to "empty its coffers before [the] Court will approve a settlement." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011). Courts in the Second Circuit have "explicitly acknowledged that the defendants' ability to withstand a higher judgment . . . standing alone, does not suggest that the settlement is unfair." *D'Amato*, 236 F.3d at 86; *Pantelyat v. Bank of Am., N.A.*, No. 16-cv-8964 (AJN), 2019 U.S. Dist. LEXIS 15714, at *21-22 (S.D.N.Y. Jan. 31, 2019) (similar). The Court must weigh this factor "in conjunction with all of the *Grinnell* factors, most notably the risk of the class prevailing and the reasonableness of the settlement fund." *AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *42.

With this in mind, the Settlement clearly represents a good compromise between the parties, and it should be finally approved.

The significant risk here that continued litigation would yield a smaller recovery – or no recovery at all – several years in the future weights heavily in favor of the Settlement.

> **6.     The Settlement Amount is Reasonable in Light of the Best Possible Recovery and the Attendant Risks of Litigation**

Courts typically analyze the last two *Grinnell* factors together.  *See Grinnell*, 495 F.2d at 463.  In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable."  *Id.* at 462.  "The determination of whether a settlement amount is reasonable in light of the best possibl[e] recovery does not involve the use of a mathematical equation yielding a particularized sum."  *Bear Stearns*, 909 F. Supp. 2d at 269.  Instead, the Second Circuit has held "[t]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Wal-Mart*, 396 F.3d at 119.  In fact, the Second Circuit has stated that "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  *Grinnell*, 495 F.2d at 455 n.2.

The Settlement provides for a recovery of $680,000.  In consultation with their experts, Plaintiffs estimate that if they prevailed on all of their claims based on the Settlement Class and Settlement Class Period as currently constituted, the maximum recovery would be $17.7 million.  The Settlement Amount of $680,000 constitutes approximately 3.8% of likely recoverable damages if Plaintiffs prevail on all claims.  ¶ 39.  However, Defendants argued that Plaintiffs had no standing to pursue the Securities Act claims, along with raising other potential loss causation

and damages issues discussed herein.    If accepted, Defendants' arguments would have greatly reduced—if not eliminated—damages.  *Id.*

The approximate 3.8% recovery is a reasonable outcome, falling within the range of reasonableness for securities class action settlements.  *See, e.g.*, *Giant Interactive*, 279 F.R.D. at 163 ("the average settlement in securities class actions ranges from 3% to 7% of the class' total estimated losses"); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 483 n.130 (S.D.N.Y. 2009) (citing a law review article finding that "the ratio of securities class action settlements to investors' economic losses has ranged over recent years between two and three percent"); *In re Medical X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 U.S. Dist. LEXIS 14888, at *15-16 (E.D.N.Y. Aug. 7, 1998) (citing cases with recoveries of less than 2%);  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving settlement that was one-sixth of the potential recovery).

Moreover, weighing "[t]he best possible recovery necessarily assumes Plaintiffs' success on both liability and damages covering the full Settlement Class Period alleged in the Complaint as well as the ability of Defendants to pay the judgement."  *Advanced Battery*, 298 F.R.D. at 179 (emphasis in original).  "[T]he adequacy of the amount offered must be judged 'not in comparison with the best possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of the plaintiff[s'] case.'"  *Giant Interactive*, 279 F.R.D. at 162 (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987)).  As described *supra*, substantial risks and uncertainties exist in continuing with the litigation here.  Further, this case has been pending for over two years, and could be expected to last several more years had the Settlement not been reached.  "While additional years of litigation might well have resulted in a higher settlement or verdict at trial, continued litigation

could also have reduced the amount of insurance coverage available and not necessarily resulted in a greater recovery." *In re Blech Sec. Litig.*, No. 94 Civ. 7696 (RWS), 2000 U.S. Dist. LEXIS 6920, at *12-13 (S.D.N.Y. May 22, 2000).   The Court should view positively the fact that the Settlement provides for payment now without further risk to the Settlement Class, rather than a speculative and likely lower payment years later.

### 7.   The Settlement Meets All the Requirements of Rule 23(e)

Rule 23(e), as recently amended, lists four factors for a court to consider in determining fairness:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's-length; (C) the relief provided for the class was adequate, taking into account: (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23 (e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).

The first two factors are thoroughly addressed elsewhere in this memorandum, which details the potential costs, risks, and delay of trial and appeal.   The section on notice describes the extensive notice program implemented in this case, which this Court preliminarily determined to be appropriate.   *See* ECF No. 72.   The proposed fee award is discussed in the accompanying Motion for Attorneys' Fees, which demonstrates that Lead Counsel's request for 30% of the Settlement Fund is fair and reasonable.

With respect to the identification of agreements pursuant to Rule 23(e)(3), the Stipulation notes that the parties have entered into a Supplemental Agreement, as is the standard practice in securities fraud class action settlements.   *See* ECF 67 ¶ 10.5.   The Supplemental Agreement provides Defendants with the option to terminate the Settlement if a certain percentage of allegedly

damaged Stemline securities request exclusion from the Settlement Class.  *Id.*  To protect the Settlement Class, the Supplemental Agreement is confidential.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015); *Hefler v. Wells Fargo & Co.*, No. 16-civ-05479 (JST), 2018 U.S. Dist. LEXIS 150292, at *23 (N.D. Cal. Sept. 4, 2018) (approving confidentiality of opt-out termination agreement to "avoid the risk that one or more shareholders might use this knowledge to insist on a higher payout for themselves by threatening to break up the Settlement").  Finally, as discussed in the section on the Plan of Allocation below, the Plan of Allocation treats all Settlement Class Members equitably.

In sum, the Settlement is fair, reasonable, and adequate under Rule 23(e) and the *Grinnell* factors, supporting Plaintiffs' request for final approval of the Settlement.

## IV.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED

Plaintiffs also seek final approval of the Plan of Allocation described in the Notice.  *See* Evans Decl., Ex. A, at 4-7.  A plan of allocation should be approved where it is fair and reasonable. *IMAX*, 283 F.R.D. at 192.  "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  *Bear Stearns.*, 909 F. Supp. 2d at 270.  A plan of allocation need not be "tailored to" every class member with "mathematical precision."  *PaineWebber*, 171 F.R.D. at 133.  In designing a fair and rational plan, counsel may take into account "the relative strength and values of different categories of claims." *Global Crossing*, 225 F.R.D. at 462; *see also In re Marsh & McLennan Cos., Sec. Litig.*, No. 04 Civ. 8144, 2009 U.S. Dist. LEXIS 120953, at *41 (S.D.N.Y. Dec. 23, 2009) ("In determining whether a plan of allocation is fair, courts look largely to the opinion of counsel.").

The Plan of Allocation here meets this standard.  Plaintiffs' Counsel developed the Plan of Allocation in consultation with an independent expert with the goal of distributing the Net

Settlement Fund to eligible Settlement Class Members in a fair and reasonable manner. ¶¶ 49 -56. Specifically, the Plan of Allocation calculates a "Recognized Loss" amount for each Settlement Class Member which depends on several factors, including whether the shares were purchased pursuant to the SPO, when the shares were sold, and the purchase and sale prices. ¶ 54; *see In re Hi-Crush*, 2014 U.S. Dist. LEXIS 177175, at *27 ("plans that allocate money depending on the timing of purchases and sales of the securities at issue are common"). The Net Settlement Fund will be allocated to eligible claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *See, e.g.*, *Global Crossing*, 225 F.R.D. at 462 ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach.").

Plaintiffs and Plaintiffs' Counsel believe that the proposed Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Settlement Class Members who suffered losses as a result of the conduct alleged in the Action similar to any result if Plaintiffs were successful at trial, and their opinion as to allocation is entitled to "considerable weight" by the Court in deciding whether to approve the plan. *Am. Bank Note*, 127 F. Supp. 2d at 430. Moreover, as of August 22, 2019, after more than 2,176 copies of the Notice containing the Plan of Allocation and advising Settlement Class Members of their right to object to the Plan of Allocation if they wish to do so were mailed to potential Settlement Class Members, and, to date, no objections to the Plan of Allocation have been received. ¶ 40; *In re Veeco Instruments Secs. Litig.*, No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629, at *40 (S.D.N.Y. Nov. 7, 2007) (favorable reaction to plan of allocation supports approval). For all of these reasons, Plaintiffs respectfully request that the Court approve the proposed Plan of Allocation.

**V.      THE NOTICE TO THE SETTLEMENT CLASS SATISFIED RULE 23 AND DUE PROCESS**

The Notice of the proposed Settlement to the Settlement Class Members satisfied the requirements of Rules 23(c)(2) and 23(e), as well as requirements under the PSLRA and the Due Process Clause of the United States Constitution.  Due process and Rule 23(c)(2) direct that the notice be "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–75 (1974).  Rule 23(e) directs "notice in a reasonable manner." Fed. R. Civ. P. 23(e)(1); *see also Wal-Mart*, 396 F.3d at 114 (under Rule 23(e), notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings").  "The adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

Here, the Notice's substance satisfied these standards, providing, *inter alia*: (i) an explanation of the nature of the Action and claims asserted; (ii) the reasons for and material terms of the Settlement; (iii) a statement of recovery; (iv) the date, time, and place of the Settlement Hearing; (v) information about the proposed attorneys' fees and costs; (vi) the time and manner for requesting an exclusion from the Settlement Class or objecting to the Settlement, Plan of Allocation, or the requested attorneys' fees, expenses, or plaintiff incentive awards; (vii) the identity and contact information of the representatives of Lead Counsel and procedures for making inquiries; and (viii) the binding effect of a judgment on Settlement Class Members. *See* Evans Decl. Ex. A.  The Notice also includes the proposed Plan of Action and information on how to submit a Proof of Claim. *Id.*

The manner of dissemination of Notice to potential Settlement Class Members also satisfied the required standards.  In accordance with the Court's Preliminary Approval Order, the

Court-approved Claims Administrator, SCS, mailed 132 copies of the Notice Packet beginning on June 28, 2019. Evans Decl., ¶ 4. The names and addresses of Settlement Class Members were obtained from listings provided to SCS, which were obtained from the U.S. transfer agent for Stemline and SCS's proprietary database of names of the most common banks, brokerage firms, nominees, and known third-party filers. *Id.* at ¶¶ 4-5. Additional Notice Packets were mailed and/or e-mailed after SCS received notice of potential Settlement Class Members from nominees, brokers, and telephone and/or e-mail requests. *Id.* at ¶ 6. As of August 22, 2019, SCS has mailed a total of 2,176 Notice Packets to potential Settlement Class Members, brokers, and nominees. *Id.* SCS also arranged for the Summary Notice to be published electronically on *GlobeNewswire* on June 28, 2019 and in print in the *Investor's Business Daily* on July 1, 2019. *Id.* at ¶ 9. In addition, SCS established and continues to maintain a website, www.strategicclaims.net/stemline-therapeutics, providing, among other things, copies of the Stipulation and related documents and the date for the Court's Settlement Hearing. *Id.* at ¶ 7. Similar notice content and dissemination methods have been consistently held to be adequate in the Second Circuit. *See, e.g.*, *New Source*, 2017 U.S. Dist. LEXIS 205785, at *9-10; *Advanced Battery*, 298 F.R.D. at 182-83.

## VI.     FINAL CERTIFICATION OF THE SETTLEMENT CLASS

The Court's Preliminary Approval Order preliminarily certified the Settlement Class for the purposes of Settlement only as all Persons who purchased or otherwise acquired Stemline securities (i) during the Settlement Class Period and/or (ii) pursuant or traceable to the SPO, and were allegedly damaged thereby, with certain exclusions. ECF No. 72 at 1-2. Certification of a settlement class is proper if the class meets the four requirements of Rule 23(a), namely numerosity, commonality, typicality, and adequacy of representation, and at least one subsection of Rule 23(b). *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012). No events have occurred to alter the propriety of the Court's preliminary class certification. For the reasons

stated in Lead Plaintiffs' Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 69 at 5-11) and the Court's Preliminary Approval Order, Plaintiffs' respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under f.

## VII.   CONCLUSION

Based on the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement and Plan of Allocation and finally certify the Settlement Class for the purposes of the Settlement, and enter the [Proposed] Order and Final Judgement filed herewith .

Dated: August 26, 2019

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

*/s/ Jacob A. Goldberg*
Jacob A. Goldberg
Leah Heifetz-Li
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: 215-600-2817 Ext. 501
Fax: 212-202-3827
Email: jgoldberg@rosenlegal.com
        lheifetz@rosenlega.com

and

Laurence M. Rosen
Phillip Kim
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
        pkim@rosenlegal.com

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Austin P. Van
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
      avan@pomlaw.com

*Co-Lead Counsel for Lead Plaintiffs and the [Proposed] Class*

**GLANCY PRONGAY & MURRAY LLP**
Kara M. Wolke
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
info@glancylaw.com

*Additional Counsel for Plaintiffs and the [Proposed] Class*